UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELMER VERNON WILLIAMS and<br>LINDA L. WILLIAMS,<br><br>    Plaintiffs,<br><br>v.<br><br>GERDAU AMERISTEEL US, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:24-cv-00172<br>)<br>)<br>)<br>) |

## **ORDER**

Before the Court is Plaintiffs Elmer Vernon Williams and Linda L. Williams' ("Plaintiffs") motion to quash a subpoena issued by Defendant Gerdau Ameristeel US, Inc. ("Gerdau") [Doc. 27]. Plaintiffs filed their motion on January 30, 2025 [Doc. 27], seeking to quash a subpoena Gerdau issued on January 16, 2025 (the "Subpoena"), directed to an entity called Preferred Capital Funding – Georgia LLC ("Preferred") [*See* Doc. 25 (notice); Doc. 25-1 (subpoena)].[1] Gerdau filed its response on February 11, 2025 [Doc. 29], and Plaintiffs replied on February 17, 2025 [Doc. 30]. The Court conducted a hearing on the motion on March 7, 2025, at which counsel for Plaintiffs and Defendant were present. Preferred neither objected to the Subpoena nor appeared at the hearing.

The Subpoena commands Preferred to produce "certified copies of the following documents for [Plaintiffs] and High Noon Logistics, LLC"[2] on or before February 17, 2025:

---

[1] Plaintiffs' motion asserts the Subpoena is attached as "Exhibit A," but there is no such exhibit attached to the motion. The Court understands the subpoena at issue is that reflected in the record as Doc. 25-1.

[2] Although not entirely clear from the briefing, Plaintiffs' counsel clarified during the hearing that

- Any and all correspondence between Preferred Capital Funding – Georgia LLC ("Preferred") and Plaintiffs' Counsel, James R. McKoon and/or Kyle S. McGuire, or their office, that evidence any agreements between plaintiffs' counsel and Preferred;

- Any and all applications, including all documentation submitted during the application process, for pre-settlement funding submitted by Elmer Vernon Williams, Linda Williams, or on behalf of High Noon Logistics, LLC;

- Any and all correspondence, office notes, and/or writing of any kind and/or nature regarding any funding provided to Elmer Vernon Williams, Linda Williams, or on behalf of High Noon Logistics, LLC;

- All liens, letters of protection, assignment of proceeds or settlement awards, and/or any and all other agreements regarding payment, including all disclosures of interest, charges, and fee schedules regarding any payments, or potential payments, provided to Elmer and/or Linda Williams.

[Doc. 25-1]. Plaintiffs rely primarily on *Focus Health Group, Inc. v. Stamps*, No. 3:19-CV-452-TRM-HBG, 2020 WL 7774906 (E.D. Tenn. Dec. 30, 2020), to support their proposition that they: (1) have standing to quash the Subpoena under Federal Rule of Civil Procedure 45(d)(3) based on "a claim of privilege, proprietary interest, or personal interest[;]" or (2) may "move for a protective order on a third-party's behalf" under Federal Rule of Civil Procedure 26(c).[3]

As to standing under Rule 45, Plaintiffs assert they "have distinct personal rights and privileges with regard [to] the information and documents sought by Defendant," including the broad categories of Personal Identifying Information, Payment Card Industry information, and/or Protected Health Information (collectively, the "Protected Information") that Plaintiffs argue are

---

High Noon Logistics, LLC is an entity wholly owned by Plaintiff Linda Williams.

[3] The *Focus* case turned on the timeliness of the subpoena at issue, but there is no question the Subpoena in this case was timely served under the operative scheduling order requiring the Parties complete all discovery by June 16, 2025 [Doc. 28 at Page ID # 223].

2

subject to myriad privacy laws and regulations [Doc. 27 at Page ID #213]. Plaintiffs further contend that Gerdau's request for documents "pertaining to any agreements for financing or litigation funding" is barred by the work-product doctrine, as any such documents would have been prepared in anticipation of litigation [*id.*]. Plaintiffs then state, in wholly conclusory fashion, that these assertions constitute personal rights and interests sufficient to confer standing under Federal Rule of Civil Procedure 45 [*id.*].[4]

The Court concludes that Plaintiffs lack standing to quash the subpoena under Rule 45 because they have failed to identify the Protected Information with specificity sufficient to enable the Court to determine whether the information rises to the level required to confer standing. Plaintiffs did not submit any sworn statements or other competent evidence identifying the Protected Information they assert is within Preferred's possession, custody, or control. Further, Plaintiffs' counsel indicated during the hearing that Plaintiffs themselves do not remember exactly what information they disclosed to Preferred—either orally or through written communications— and have not seen any of the potentially responsive documents requested in the Subpoena. The Court cannot, under these circumstances, hold Plaintiffs have standing to quash the Subpoena.

That does not end the inquiry, however, because "where a party's standing may fall short

---

[4] Plaintiffs' reliance on *Whitting v. Trew*, No. 3:20-CV-54-TRM-DCP, 2020 WL 6468131 (E.D. Tenn. Nov. 3, 2020) in support of this proposition is perplexing, for a number of reasons. First, the movants in *Trew* were not asserting any privileges remotely similar to those upon which Plaintiffs rely. Instead, they argued that they had standing to quash the subpoenas at issue "based on Plaintiff Whiting's personal right under the First Amendment to be free from harassment from a governmental entity in retaliation for his political speech, as well as his First Amendment right to be free from retaliation for filing the instant lawsuit." *Id.* at *6. Second, the *Trew* court held movants lacked standing to quash the subpoena under Federal Rule of Civil Procedure 45. Third, the *Trew* court held movants failed to demonstrate good cause sufficient for issuance of a protective order. *Id.* at *7–10.

3

to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf." *Focus*, 2020 WL 7774906, at *2 (quoting *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-cv-01124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018)). That rule provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

"The burden of establishing good cause for a protective order rests with the movant[,]" who "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001); *see also In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (party moving for a protective order must show good cause, "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statement."). "A movant can satisfy Rule 26(c)'s 'good cause' requirement by showing that the proposed discovery is irrelevant." *Robinson ex rel. T.R. v. Eli Lilly & Co.*, No. 5:17-388-KKC, 2019 WL 4803224, at *1 (E.D. Ky. Oct. 1, 2019) (citing *Anwar v. Dow Chem. Co.* 876 F.3d 841, 854 (6th Cir. 2017)).

The heart of Plaintiffs' motion, as clarified during the hearing, is that the requested information is irrelevant. Plaintiffs argue that their relationship with Preferred has nothing to do with the alleged personal injury at issue in this case or the damages resulting from such injury. Yet Plaintiffs' discovery responses indicate otherwise. For example, Plaintiffs responded to Gerdau's request for documents related to Plaintiffs' damages by identifying, *inter alia*, a "loan" from Preferred that Plaintiffs used to cover certain unidentified expenses:

4

**REQUEST NO. 31**: Please produce any and all documents that identify, reflect, support, or relate to any payments or other consideration received by you for any loss, expense, or other damages associated with any injuries or damages, including property damage, allegedly sustained by you as a result of the incident at issue in this litigation.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks production of documents that are not reasonably calculated to the lead to admissible evidence.[5] Subject to and without waiving said objection, the documents that are not discoverable, but would otherwise arguably be responsive to this request, pertain to ***a loan from Preferred Capital Funding that Plaintiffs obtained because they got behind on bills and Vernon had no income***, as well as gifts from friends who set up a "Go Fund Me" to help Plaintiffs financially.

[Doc. 29-1 at Page ID # 247–48 (emphasis added)]. Then, in response to Gerdau's interrogatories, Plaintiffs itemized their alleged damages, with the largest line item being a substantial amount of unidentified debt:

**INTERROGATORY NO. 9**: Itemize all damages which you claim resulted from the incident at issue in this litigation, including, but not limited to, property damage, itemized medical expenses, hospital expenses, medication expenses, lost wages, loss earnings, lost income, lost profits, any other pecuniary losses, any other special damages, general damages, or punitive damages.

**RESPONSE:** Loss of wages - $20,000 per month
Loss of company;
Loss of vehicle – still owe $15,000.00 on it;
Medical bills in the amount of $10,000.00; and
I am in debt totaling $250,000.00.

[Doc. 34-1]. Plaintiffs' discovery responses therefore reflect that Plaintiffs received a loan from

---

[5] The Court notes that "the former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept of reasonably calculated to lead to the discovery of admissible evidence was replaced by the direct statement that information within the scope of relevancy "need not be admissible in evidence to be discoverable." *Staggs v. Panda Express, Inc.*, No. 3:24-CV-00010, 2024 WL 4509101, at *1 (M.D. Tenn. Oct. 16, 2024).

Preferred for certain expenses, and that they seek $250,000.00 in damages relating to debt resulting from the incident at issue in the litigation.

Plaintiffs' counsel at the hearing nonetheless argued and offered to stipulate that none of Plaintiffs' damages have anything to do with money received from Preferred. [*See also* Doc. 30 at ¶ 27 ("No claim or theory of damages asserted by Plaintiffs are based in any way, part, or manner upon any litigation funding received from Preferred Capital.")]. While that may end up being true, in light of Plaintiffs' discovery statements, the Court cannot find the Subpoena requests irrelevant information.[6]

Finally, Plaintiffs contend that the Subpoena seeks production of material covered by the work product doctrine. Plaintiffs do not, however, specifically identify any documents that would constitute work product. Instead, Plaintiffs' counsel identified the process Plaintiffs and their lawyers undertook to receive funding from Preferred, which included discussions between Plaintiffs' counsel and Preferred. Gerdau's counsel conceded that Gerdau was not seeking any documents containing Plaintiffs' counsel's mental impressions or work product, but counsel argued the facts Plaintiffs themselves conveyed to Preferred would not constitute work product. Again, the Court is without information sufficient to determine whether and to what extent the work product doctrine applies to the potential universe of discoverable documents.

The Court therefore finds Plaintiffs have failed to show good cause sufficient to issue a

---

[6] Gerdau originally argued the requested information was relevant because it could reflect Plaintiffs' using Preferred funding to "bolster" their damages claims, relying primarily on *Combs v. Bridgestone Americas, Inc.*, No. 2:22-CV-00130-DCR-EBA, 2023 WL 9530592, at *7 (E.D. Ky. Nov. 27, 2023), *report and recommendation adopted*, 2024 WL 188360 (E.D. Ky. Jan. 16, 2024). During the hearing, however, Gerdau's counsel abandoned that position considering Plaintiffs' counsel's representations. The Court therefore need not determine the import of *Combs*.

protective order preventing disclosure of all information requested in the Subpoena. That said, the Court finds that the Subpoena in its current form is overly broad, both in temporal scope and in the breadth of information sought. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion to quash [Doc. 27] as follows:

- As to the first category of documents, the Court **GRANTS** the motion, as correspondence evidencing agreements between Plaintiffs' counsel and Preferred have no bearing on the damages Plaintiffs seek in this case.

- As to the second, third, and fourth categories of documents, the Court finds the requested information relevant in light of Plaintiffs' discovery responses.

- As none of these categories are limited in temporal scope, the Court here clarifies that Preferred need only produce those responsive documents dated from April 20, 2023 (the date of the alleged injury) through January 16, 2025 (the date Gerdau issued the Subpoena).

The Court further **ORDERS** that Preferred produce such documents to Plaintiffs' counsel on or before **March 17, 2025**.[7] Plaintiffs' counsel shall then have fourteen (14) days from their receipt of the documents to produce to Gerdau: (1) all non-privileged documents Preferred produces in response to the Subpoena; and (2) to the extent Plaintiffs assert any documents contain or constitute work product, a privilege log identifying the withheld documents in a manner that, without revealing information itself privileged or protected, will enable Gerdau to assess the claim.

The Clerk is **DIRECTED** to mail a copy of this order to Preferred Capital Funding – Georgia LLC, c/o Registered Agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

---

[7] The Subpoena—to which Preferred never objected—originally commanded compliance by February 17, 2025 [Doc. 25-1].

SO ORDERED.

ENTER.

/s/ *[signature]*
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

8